# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

PIAZZA'S SEAFOOD WORLD, L.L.C.                          CIVIL ACTION

**VERSUS**

**BOB ODOM, COMMISSIONER OF**
**AGRICULTURE FOR THE STATE**              **NO. 07-413-BAJ-CN**
**OF LOUISIANA, IN HIS OFFICIAL**
**CAPACITY AND INDIVIDUAL**
**CAPACITY**

## RULING & ORDER

This matter is before the Court on the "Consolidated Motion to Compel Production of Documents from Defendant Bob Odom, Pursuant to Rules 34 and 37, and from the Louisiana Department of Agriculture and Forestry, Pursuant to Rules 37 and 45, with Request for Attorneys' Fees" (R. Doc. 72) filed by plaintiff, Piazza's Seafood World, LLC ("Piazza"). Defendant, Bob Odom ("Odom"), former Commissioner of the Louisiana Department of Agriculture and Forestry ("the Department"), in his individual capacity, has filed an opposition (R. Doc. 83) to Piazza's motion, in response to which Piazza has filed a reply memorandum. (R. Doc. 86). The Department has not filed an opposition to the motion.

## FACTS & PROCEDURAL BACKGROUND

This suit, which was filed pursuant to 42 U.S.C. §1983 on June 12, 2007, concerns the alleged attempts by Odom to protect Louisiana's domestic seafood industry from foreign competition by what Piazza contends are unconstitutional means. Specifically, this suit was prompted by the seizure, without a warrant, of 400,000 pounds of Piazza's

1

seafood in May 2007, by the Department, acting at the alleged direction and pursuant to regulations promulgated by Odom. Piazza contends that its property remained under seizure for months, pursuant to the discriminatory regulations, until a state district court (acting pursuant to an Order of this Court) declared Odom's regulation and the Department's conduct illegal and ordered the release of Piazza's property.

At the conclusion of the state court litigation, the case returned to this Court for resolution of the remaining federal claims, which relate to Piazza's damage claims against Odom. Piazza propounded requests for production of documents to Odom on March 1, 2011. Piazza also served the Department with a subpoena *duces tecum*, seeking certain documents.[1] Piazza contends that its goal in propounding such discovery requests was to "obtain all the documents related to the Department's seizure of its property, to be used in depositions of Department employees, depositions which were ultimately scheduled to begin on May 16, 2011." *See*, R. Doc. 72-1, p. 2.

The Department and Odom, both represented by the same counsel at the time, requested and received two (2) extensions of time within which to respond to Piazza's discovery, with the ultimate deadline being set for April 25, 2011. In requesting those extensions, defense counsel informed plaintiff's counsel, via email, that Todd Thompson, the Department's Director of Weights & Measures and the official responsible for the Department's response was "with the help of his assistants at [the Department] . . . conscientiously accumulating all requested in the [subpoena *duces tecum*]." Two days

---

[1] Although the specific documents that the requests for production and the subpoena seek are discussed in more detail below, as a general proposition, Piazza sought all Department documents, including all emails and other electronic documents, within the Department's possession, custody, or control, that concern the Department's dealings with Piazza. *See*, R. Doc. 72-1, p. 4-5.

2

after the April 25th deadline, the defendants served Piazza with their discovery responses.

Odom objected to all of Piazza's requests for production and did not produce any documents. He responded that, because Piazza subpoenaed documents from the Department, he had no obligation to respond further in his individual capacity. As to the subpoena, the Department objected to and declined to produce any documents responsive to nine (9) of the ten (10) categories of documents listed therein. In total, the Department produced sixty (60) pages of documents responsive to Category No. 7 of the subpoena.

On April 30, 2011, Piazza's counsel sent, via email, a letter to defendants' counsel,[2] advising of insufficiencies in the defendants' discovery responses and informing defense counsel that a motion to compel would be filed if a full production in response to such requests was not made by May 6, 2011. Following that May 6th deadline, on May 10, 2011, plaintiffs' and defense counsel held a telephone conference, during which conference defense counsel reiterated the defendants' objections and their decision not to produce any further documents.

Despite that representation by defense counsel, on May 18, 2011, plaintiff's counsel received a "supplement" to defendants' discovery responses, which included a disk received from the Department that allegedly contained additional responsive documents. When plaintiff's counsel inspected that disk, however, he found that the Department's "supplement" was "nothing more than a copy of some (but not all) of the electronic

---

[2] On April 27, 2011 and pursuant to discussions among counsel, Piazza also noticed the depositions of five (5) employees of the Department, who were allegedly involved in the seizure of Piazza's seafood in 2007. Those depositions were scheduled for May 16-18, 2011. Piazza contends that, as a result of the defendants' failure to produce any meaningful documents that could be reviewed in preparation for those depositions, Piazza was forced to put the depositions on hold pending the resolution of the present motion to compel.

Case 3:07-cv-00413-BAJ -CN   Document 95   08/19/11   Page 3 of 21

documents, which had been produced timely (and without objection) by the Department of Health and Hospitals ("DHH") on April 25, 2011.[3]

As a result, Piazza filed the present motion, wherein it contends that the "responses" of Odom and the Department do not constitute a good faith effort to comply with its discovery requests. Piazza's motion seeks an order compelling "an immediate, full and complete response to document requests 1-7 issued to Odom, and to categories 1-6 and 8-10, set forth in the subpoena *duces tecum* served on the Department." As to category 7 set forth in the subpoena, the motion further seeks "an order requiring the responsible official with the Department to make a written certification regarding the search undertaken, and whether responsive documents have been lost or destroyed since the commencement of the litigation."[4] Finally, Piazza seeks an award of the reasonable attorney's fees and expenses that it has incurred in bringing this motion.

Soon after the filing of Piazza's motion to compel, Odom enrolled new counsel on June 7, 2011. He then timely requested and received an extension of time within which to

---

[3] Piazza served DHH with a subpoena comparable to that served upon the Department on March 1, 2011. DHH received the same extensions of time within which to respond as did the Department; yet, DHH timely responded to Piazza's subpoena on April 25, 2011, without asserting any objections. According to Piazza's present motion, DHH made "a full and organized production of hundreds of pages of documents, and also provided a disk containing numerous responsive e-mail communications and electronic files captured from the local hard drive of one of its employees." Piazza complains, in its motion, that there has been "to date no explanation concerning why [the DHH] was able to discover such a significant repository of documents concerning an operation undertaken by the Department, when the Department itself was able to produce only 60 pages, all of it apparently recovered from outside sources." *See*, R. Doc. 72-1, p. 7.

[4] In short, Piazza's complaint in its motion is that "the Department was unable (or unwilling) to produce a single internal communication, memorandum, or other document concerning an operation in which multiple Department employees effected seizures of roughly 400,000 pounds of Piazza's seafood at multiple locations, detained that seafood over the course of several months, and during that time administered laboratory tests to that seafood, ostensibly while in contact with other federal and state agencies. Rather, the only documents produced were a selection of those previously disseminated to outside counsel, filed with this Court, or generated by another agency." *See*, R. Doc. 72-1, p. 7.

4

respond to Piazza's motion and timely filed his opposition within that extension on July 11, 2011. The Department, which is presently represented by separate counsel, however, did not request an extension of time to respond to Piazza's motion, nor has it filed any opposition to the motion as of this date.

## LAW & ANALYSIS

### I.    Scope of Discovery:

Under the Federal Rules of Civil Procedure, unless the scope of discovery is otherwise limited by an order of a court, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial, if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* Thus, a party may discover information that is not admissible at trial, if such information will have some probable effect on the organization and presentation of the party's case or will otherwise aid in his or her preparation for trial. 23 Am.Jur.2d Depositions and Discovery §22 9 (citing various cases). Discovery should therefore ordinarily be allowed, under the concept of relevancy, unless it is clear that the information sought can have no possible bearing upon the subject matter of the action. *Id.* However, when discovery requests approach the outer bounds of relevance and the information sought may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the court must then weigh the request with the hardship to the party from whom the discovery is sought. *Id.*

5

## II.    Requests for Production directed to Odom:[5]

In his opposition, Odom explains that, since this suit was filed in June 2007, his counsel has changed three (3) times, with his present counsel enrolling on June 7, 2011. Odom further explains that his prior counsel was not able to meet with him prior to responding to Piazza's discovery requests on April 27, 2011 because Odom was unavailable to meet and that his prior counsel answered the discovery requests to the best of their ability without Odom's assistance.   Odom also notes that, at the time the "supplement" was produced on May 18, 2011, his former counsel did not know whether Odom was knowledgeable about, or familiar with, the contends of the CD produced, or whether the CD was ever in Odom's possession.

According to Odom's opposition, his newly enrolled counsel has "worked diligently to review four years worth of pleadings and correspondence between the parties to get up to speed on the case" and has had the opportunity to actually meet with Odom, during which meeting Odom stated that he "does not have any documentation relating to any of the requests for production made by plaintiff."   *See*, R. Doc. 83, p. 4.  In an effort at satisfying the motion to compel, Odom's new counsel therefore propounded a "Second Set of Supplemental Answers to Plaintiff's First Set of Requests for Admissions, Interrogatories,

---

[5] The requests for production at issue seek the following categories of documents from Odom: (1) all documents that mention Piazza; (2) all documents that mention seafood imported from outside of the United States; (3) all documents concerning any declaration issued by Odom that mentions or refers to seafood imported into the United States, including without limitation the "Declaration of Emergency;" (4) all documents concerning the Regulations; (5) all documents that reflect communications authored by, or involving, legal counsel, to which Odom is a party, either as author or recipient (including merely a copy recipient), and which address the regulation of seafood imported into Louisiana for any foreign nation, including without limitation any such documents that reflect such communications regarding the "Declaration of Emergency" and Regulations; (6) all documents that reflect or concern the seizure of seafood owned or claimed by Piazza by any agent of, or upon instructions issued by, Odom; and (7) all documents that concern or reference the Eastern District Lawsuit, the Eastern District Ruling, or the Fifth Circuit Opinion.

6

and Request for Production" on July 7, 2011, wherein Odom expressly represents that he does not possess any of the documentation requested by Piazza and that any documents Odom may have possessed while in office responsive to Piazza's requests are held by the Department. *See*, Exhibit A to Odom's opposition. Considering that representation by Odom, there simply are no responsive documents within Odom's possession for which the Court can compel production from him in his individual capacity, and Piazza's motion as it relates to Odom, individually, should therefore be denied.[6] Such documents should be obtained directly from the Department itself.

### III.   Subpoena directed to the Department:

It should first be noted that, with respect to the Department, Piazza's present motion is unopposed. Local Rule 7.5M of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty-one (21) days after service of the motion. The present motion was filed on May 19, 2011, and the Certificate of Service attached to the motion indicates that a copy of the motion was sent via e-mail to counsel for the Department on that same date. Thus, well over twenty-one (21) days have elapsed since the service of the motion, and the Department has failed to file any opposition thereto or

---

[6] Pursuant to Fed. R. Civ. P. 34, Odom is required to produce only those non-privileged, relevant documents that are "within his possession, custody or control." Fed. R. Civ. P. 34. Federal courts have consistently held that documents are deemed to be within the "possession, custody or control" of a party for purposes of Rule 34 if the party has "actual possession, custody or control, or has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action." *Monroe's Estate v. Bottle Rock Power Corp.*, 2004 WL 737463 (E.D.La. 2004). The burden is on the party seeking the discovery to make a showing that the other party has control over the material sought. *Id.*, at *10.

Odom has certified, through his second supplemental discovery responses, that he is not in possession of the responsive documents. Furthermore, he indicates that, since he is no longer the Commissioner for the Department, he does not have custody or control of the documents in question in an official capacity. Piazza has the burden of showing that Odom has control over the documents in question, and it has failed to make that showing.

7

obtain any extension for filing an opposition thereto.

In addition to being unopposed, the undersigned finds that Piazza's motion could be granted as to the Department on the basis that the Department waived the objections asserted in its responses to the subpoena because the Department failed to raise those objections within fourteen (14) days of being served with the subpoena.[7]  *See*, Fed. R. Civ. P. 45(c)(2)(B)(Nonparty served with a subpoena duces tecum must make objections to it within 14 days after service).  Failure of a nonparty to serve timely objections to a Rule 45 subpoena generally results in a waiver of all grounds for objection, including privilege. *Moon v. SCP Pool Corp.,* 232 F.R.D. 633 (C.D.Cal. 2005), citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998).  However, in certain circumstances and for good cause, the failure of a nonparty to act timely will not bar consideration of objections to a Rule 45 subpoena.  *Id.*, at 636 (citing various cases).  For example, if aspects of a subpoena are overbroad on their face and exceed the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith, waiver of the non-party's untimely objections is not automatic, and the objections may be considered.  *Id.*  In light of the overbroad nature of aspects of Piazza's subpoena in the present case, the undersigned does not consider all of the Department's untimely objections to be waived and therefore considers them below.

---

[7] As noted above, the subpoena was served upon the Department on March 1, 2011; however, the Department did not produce any objections to that subpoena until April 27, 2011.

Case 3:07-cv-00413-BAJ -CN   Document 95   08/19/11   Page 8 of 21

As mentioned above, the subpoena directed to the Department set out ten (10) categories of documents to be produced. Each category is discussed in detail below.

### "1. All documents which reference or concern Piazza."

The Department objected to this category of documents on the ground that it is "overbroad" because it includes documents involving the prior federal litigation in the Eastern District of Louisiana, *Piazza v. Odom*, 448 F.3d 774 (5th Cir. 2006). The Department refused to produce any documents responsive to this category because producing documents related to the Eastern District litigation "would be a waste of paper, time and human resources" and because the Department "considers the [Eastern District] federal litigation irrelevant to the litigation of the case *sub judice*."

The undersigned finds that the Department's relevancy objection lacks merit as the Eastern District litigation has direct relevance to this matter. As discussed in the undersigned's prior Ruling & Order dated May 13, 2010, Piazza specifically alleges in the present suit that, despite the Fifth Circuit's judgment in the 2006 case of *Piazza v. Odom*, 448 F.3d 744 (5th Cir. 2006) (*i.e.*, the Eastern District litigation), which enjoined Odom's attempts to enforce a state statute that unconstitutionally discriminated against seafood imported from the Far East, Odom nevertheless promulgated, in 2007, without any authorization from the Louisiana Legislature, the agency regulations at issue in this suit that allegedly, facially discriminated against the very same commerce; interpreted those regulations to directly regulate not only the foreign seafood sold within Louisiana but seafood sold in other states as well; and exercised unfettered discretion to seize and search Piazza's property without a warrant, a hearing, or reasonable cause in enforcing those regulations. *See*, R. Doc. 55, p. 2, n. 1. In that prior Ruling, the undersigned also

9

determined that Piazza sufficiently alleged that Odom was on notice that the regulations he promulgated were unconstitutional in the sense that they violated the Foreign Commerce Clause based upon his knowledge of the Fifth Circuit's ruling in the Eastern District litigation – a matter involving the exact same parties and similar unconstitutional conduct. *Id.* Thus, the Eastern District litigation is relevant to this matter because that litigation is alleged to have put Odom on notice that his conduct at issue in this case was unconstitutional.[8]

As to the Department's overbreadth and burden objection, however, the undersigned finds that such objection has merit. Piazza's counsel indicates that, if the Department had contacted him and requested that Piazza remove from the scope of the production commanded by the subpoena any documents previously produced in discovery in the Eastern District litigation and any documents filed into the record in the Eastern District litigation, he would have been "happy to agree" to that revision of the subpoena. However, because the Department's counsel did not call Piazza's counsel and make that request, Piazza contends that the Department should be required to produce all documents relating to the Eastern District litigation since the only representation the Department made to Piazza, prior to service of its overbreadth/burden objection, was that the Department was "conscientiously accumulating all requested in the [subpoena duces tecum]." The undersigned finds that requiring the Department to produce to Piazza documents that were previously produced to it in the context of the Eastern District litigation and documents that are part of the public record in the Eastern District litigation is overly burdensome and

---

[8] The Eastern District litigation is therefore particularly relevant to Piazza's present claims of retaliation and punitive damages.

10

wasteful. Thus, to the extent the first category of the subpoena seeks production of those documents, the Department is not required to produce them. Otherwise, the Department is to produce all other non-privileged documents relating to the Eastern District litigation and to Piazza generally that are within the Department's possession, custody, or control. To the extent the Department contends any responsive documents are privileged, it shall produce a privilege log describing those documents as required by Fed. R. Civ. P. 26(b)(5).[9]

> **"2. All documents which reference or concern seafood imported from outside of the United States, including without limitation the nations of Vietnam and China."**

> **"3. All documents concerning any "Declaration of Emergency" that mentions or refers to seafood imported into the United States, including without limitation that "Declaration of Emergency" issued on or about May 4, 2007 concerning seafood imported from the People's Republic of China."**

The Department objected to the above requests on the ground that they are "overly-broad and irrelevant inasmuch as these documents have nothing whatsoever to do with whether Piazza was in violation of 21 CFR §530.41, and whether defendant, Mr. Bob Odom, believed he had the legal authority to enforce LAC 7:XXXV 501, 503, and 511, the pertinent legal issues in this litigation." The undersigned agrees with Piazza, however, that the Department's objection is an attempt to limit the issues in this litigation to those that it

---

[9] Rule 26(b)(5) requires that, if an objection is asserted on the basis of privilege, the responding party must: (1) expressly make that claim; and (2) describe (in a privilege log) the nature of the documents, communications, tangible things not produced or disclosed in a manner that, without revealing information alleged to be privileged or protected, will enable the other parties to assess the claim of privilege or protection.

11

believes are relevant and thereby restrict discovery.[10]  As Piazza argues in its motion, in a case regarding violations of the Foreign Commerce Clause arising from the alleged improper regulation by the Department of seafood imported from China and Vietnam, requests for the production of documents discussing such seafood and discussing such regulations are at least "reasonably calculated to lead to the discovery of admissible evidence."  Thus, the Department's relevancy objection should be denied.  The undersigned does, however, find that Categories 2 and 3 are overbroad in the sense that they contain no time limitation.  The Court therefore limits the time period for which the Department must produce information responsive to Categories 2 and 3 to the five (5) year period immediately preceding the promulgation of the regulations at issue in this suit.

### "4.     All documents concerning the drafting, promulgation, and enforcement of the regulations codified as LAC 7:XXXV.501, 503, 505 and 511."

The Department objects to this request on the ground of "relevance" and refers Piazza to the affidavit of the Department's general counsel, Marvin Montgomery ("Montgomery"), previously filed into the record of this matter as an exhibit to Odom's motion for summary judgment on June 15, 2010, which motion was subsequently denied.

---

[10] For example, one of the issues that the Department contends is central to this case concerns an alleged violation by Piazza of 21 CFR §530.41, a statute that Piazza contends is completely inapplicable to it and irrelevant to this litigation.  Piazza contends that such federal regulation, which prohibits the extra-label use of certain antibiotics in food-producing animals, does not apply to it as an importer of foreign seafood (as opposed to a domestic producer of seafood), and that, in any event, the Department has no authority to enforce that federal regulation, which is administered and enforced by the FDA.  Piazza further contends that, while Odom's subjective belief as to whether he had the authority to issue the regulations at issue, may be an issue relevant to Piazza's claim for punitive damages in that it may go to the issue of whether Odom had "malice" in enacting the regulations, that "subjective belief" issue is not the only pertinent issue in this litigation.  Whether or not Odom's conduct was objectively reasonable in light of existing law is the relevant inquiry in determining whether Odom is entitled to qualified immunity for his actions.  *See, Harper v. Harris County*, 21 F.3d 597 (5th Cir. 1994)(Qualified immunity shields a state actor's conduct as long as the conduct: (1) does not violate a clearly established right, and (2) was objectively reasonable under existing law).

12

The regulations listed in Category 4 are the very regulations that are at issue in this litigation; as such, documents concerning their drafting, promulgation, and enforcement are relevant to this litigation. Furthermore, the Department's reference to the affidavit of its general counsel is an insufficient response, as it does not involve the production of any actual documents relating to the drafting, promulgation, and enforcement of the regulations in question but instead simply contains a summary of that counsel's involvement in such activities. *See*, R. Doc. 57-7. Accordingly, the Department will be required to produce all non-privileged documents responsive to Category 4 of the subpoena. To the extent any responsive documents are claimed by the Department to be privileged, the Department shall produce a privilege log describing those documents in accordance with Fed. R. Civ. P. 26(b)(5).

> **"5. All documents which concern or reference the partial summary judgment granted to Piazza on December 22, 2004 in the matter entitled <u>Piazza's Seafood World, LLC v. Bob Odom</u>, Civil Action No. 04-690, Section "A" (1) in the United States District Court for the Eastern District of Louisiana; and the subsequent affirmance of that partial summary judgment by the United States Court of Appeal for the Fifth Circuit, in an opinion issued on May 4, 2006, and reported at 448 F.3d 744 (5th Cir. 2006)."**

In response to this request, the Department repeats its objection to Category No. 1, *i.e.*, that documents relating to the Eastern District litigation are irrelevant to this case. As discussed above, however, the undersigned finds that the Eastern District litigation is relevant to Piazza's allegations in this lawsuit. Thus, the Department will be required to produce all non-privileged documents responsive to Category 5 of the subpoena that have not been previously produced to Piazza and that were not part of the record in the Eastern District litigation. To the extent there are responsive documents alleged by the Department

to be privileged, such documents should be described in a privilege log.

> **"6.** **All documents which reflect communications authored by, or involving, legal counsel, to which Odom is a party, either as author or recipient (including merely a copy recipient), or which in any case were reviewed at some point by Odom, and which address the Department's regulation of seafood imported into Louisiana from any foreign nation, including without limitation any such documents which reflect such communications regarding the declarations of emergency, regulations, and judicial decisions described in requests (3) through (5), preceding."**

The Department objected to Category No. 6 of the subpoena on the basis of relevance, discoverability, and the attorney-client privilege. Piazza contends that the Department has affirmatively waived the attorney-client privilege with respect to any legal advice he received concerning the regulations in question because he produced into the record of this matter and the record of the ancillary state court proceeding the affidavit by the Department's legal counsel, Montgomery, referenced above, which indicates that Montgomery performed legal research for Odom and gave Odom legal advice relative to the regulations at issue in this lawsuit. The Department has referred to that affidavit in this litigation in an effort at demonstrating Odom's subjective belief that he had authority to promulgate the regulations in question.

As a general matter, "[c]ourts have found waiver [of the attorney-client privilege] by implication when a client testifies concerning portions of [an] attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense . . ." *Morande Automotive Group, Inc. v. Metropolitan Group, Inc.*, 2009 WL 650444, *3 (D.Conn. 2009), quoting *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982). For example, a client's reliance upon an attorney's advice as an element of a claim or defense (as is the

case herein with Odom's reliance upon his counsel's advice that his actions were in compliance with law as a defense to Piazza's claims of unconstitutional conduct) places otherwise privileged attorney-client communications at issue and implicitly waives the privilege. *Id.*[11] Because a fact-finder would be unable to evaluate the merits of Odom's defense that his counsel told him his conduct was in compliance with law without evidence as to what legal advice Odom actually relied upon (*i.e.*, the jury could not evaluate the defense without the protected information), the privilege must give way. *Id.* Accordingly, to the extent that the documents requested in Category 6 of the subpoena relate to legal advice provided by the Department's counsel, Montgomery, to Odom, they should be produced by the Department since such advice has been placed at issue in this litigation and any attorney-client privilege protection relating to those documents has been waived. Any responsive documents involving Odom and counsel other than Montgomery, however, should be described by the Department in a privilege log.

---

[11] *See also, Willy v. Administrative Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005)(When a party entitled to claim the attorney-client privilege uses confidential information against his adversary (*i.e.*, the sword), he implicitly waives its use protectively (*i.e.*, the shield) under that privilege); *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n. 18 (5th Cir. 1999); *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458 (E.D.Mich. 2008)(holding that an employer's motion for summary judgment on the issue of good faith in an employee's FLSA overtime action affirmatively asserted advice of counsel as its basis for good faith and thereby waived the attorney-client privilege with respect to communications between the employer's vice-president and attorneys on the issue of the employee's exempt classification, where the employer accompanied the motion with the vice-president's affidavit that stated that the decision to classify employees as exempt was made in ongoing consultation with counsel and argued in the motion that the attorneys confirmed the vice-president's understanding of the regulations).

Similar to *Henry*, Odom relies upon the affidavit of general counsel for the Department, Montgomery, in support of his argument in his motion for summary judgment that he was in good faith and subjectively believed he had the authority to issue the regulations in question. As such, the attorney-client privilege has been waived with respect to communications between Odom and Montgomery on issues relating to the promulgation and enforcement of the regulations.

15

**"7.    All documents which reflect or concern the seizure of seafood owned or claimed by Piazza by any agent of, or upon instructions issued by, the Department."**

As mentioned above, this is the only category of documents in response to which the Department produced any documents.  Piazza, however, contends that such production appears deficient considering that it included only sixty (60) pages of documents and no "internal communication[s], memorand[a], or other document[s] concerning an operation in which multiple Department employees effected seizures of roughly 400,000 pounds of Piazza's seafood at multiple locations, detained that seafood over the course of several months, and during that time[,] administered laboratory tests to that seafood, ostensibly while in contact with other federal and state agencies."  *See*, R. Doc. 72-1, p. 7.  Piazza notes that, beginning at least in June 2007 when this suit was filed, Odom, and the Department over which he exercised control, were under a legal duty to take appropriate measures to preserve evidence relevant to this case.   Piazza contends that the Department's "ephemeral production" suggests that Odom did not implement any policy to preserve evidence concerning this lawsuit and that, as a result, Piazza has remedies it may pursue.   At this point, however, Piazza requests, with respect to Category 7 of the subpoena, that the Court order Todd Thomson, who, according to the email of the Department's counsel dated April 14, 2011, was the Department official who oversaw the production, to "certify, under oath and in writing, within ten (10) days of this Order, that the Department has conducted a diligent search for any responsive documents, including a search of any hard drives or servers as to which it has access and/or control."  Piazza seeks to have such certification include "a description of the search parameters used to

16

discover any responsive electronic documents on the Department's hard drives and servers" and to have Mr. Thompson "further certify that the 60 pages produced is the sum of all documents within the Department's possession, custody, or control which 'reflect or concern the seizure of seafood owned or claimed by Piazza by any agent of, or upon instructions issued by, the Department." Finally, Piazza requests that the "certification should categorically describe all possibly responsive documents that may have been lost or destroyed since this lawsuit was filed." *See*, R. Doc. 72-1, p. 20.

Considering that the Department has not filed an opposition to the order proposed by Piazza and that the undersigned finds such order to be an appropriate means for determining (1) whether the Department has conducted a thorough search for the documents requested and has produced all responsive documents in its possession, custody, or control, (2) whether Odom and the Department fulfilled their duties to preserve relevant evidence once this lawsuit was filed,[12] and (3) whether relevant evidence has been lost or destroyed as a result of a failure to implement procedures to preserve that evidence, Piazza's requested order will be issued, and the Department will be directed to comply within twenty (20) days.[13]

---

[12] Considering that this lawsuit was filed just one (1) month after Odom issued an "emergency declaration" promulgating regulations that resulted in the seizure of Piazza's seafood, that the seizure continued for months after this lawsuit was filed, and that this lawsuit was filed during the pendency of another suit involving Piazza and Odom in the Eastern District of Louisiana, Odom and the Department were certainly under a duty during that time period to preserve evidence relating to Piazza and to the seizure of its seafood. The order proposed by Piazza is therefore warranted. *See, Ashton v. Knight Transp., Inc.*, 2011 WL 734282, *26 (N.D.Tex. 2011)(noting that a duty to preserve arises "when a party knows or should know that certain evidence is relevant to pending or future litigation." A potential party to litigation must not destroy "unique, relevant evidence that might be useful to an adversary" once litigation becomes "reasonably anticipated." The duty to preserve covers not only parties but also potential parties' employees who are likely to have relevant information, *i.e.*, to "key players").

[13] Although Piazza requested that the Department be ordered to comply within ten (10) days, the Court will allow the Department a longer period of twenty (20) days within which to comply.

17

**"8.    All documents which reflect or concern any meeting attended by any domestic (Louisiana) producer of seafood, which was also attended by Odom, or any of the Specific Agents of the Department."**

**"9.    All records concerning the usage of telephones, cellular phones, pagers, or other communication devices issued to Odom, and each of the Specific Agents of the Department."**

**"10.    Any calendar, day planner, phone log, reimbursement form, travel form, overtime log, vehicle usage log, or other document which sets forth the actual, planned, or intended actions of Odom, and each of the Specific Agents of the Department."**

The undersigned agrees with the Department's objection that the above categories are overly broad in that they contain no time limitations and request a number of documents that are likely irrelevant to this litigation. Although Piazza contends that the above requests are the only way to track the movements of the Department employees involved in the alleged violation of its rights, which will, in turn, permit Piazza to "establish the practical chain-of-command within the Department at the time of the seizures" and to establish whether Odom was "'personally involved' not only in the promulgation of the Regulations, but also in their enforcement, which presents a separate ground for Section 1983 liability," the undersigned disagrees that such burdensome discovery is necessary to ascertain that information. The chain-of-command within the Department as it relates to this case and Odom's personal involvement in the promulgation and enforcement of the regulations at issue can be more easily and efficiently obtained through narrowly-tailored oral deposition discovery, as opposed to the unlimited means requested by Piazza in Categories 8-10.[14] Accordingly, no further response to those categories is required by the

---

[14] As mentioned above, Piazza certainly plans on taking the depositions of at least five (5) Department employees since those depositions were previously scheduled for May 16-18, 2011 and are presently on hold pending a ruling on this motion.

18

Department at this time.

## IV. Piazza's Request for Attorneys' Fees:

Despite the fact that Piazza's motion is being denied with respect to Odom individually and being denied in part with respect to the Department, the undersigned nevertheless finds that the reasonable costs and fees incurred by Piazza in connection with this motion should be apportioned between Odom and the Department. It was only after this motion was filed (and after the filing of objections by Odom and the representation by Odom's former counsel that a diligent search for responsive documents was being undertaken) that Odom finally produced supplemental discovery responses definitively indicating that no responsive documents are in his possession, custody, or control. Fed. R. Civ. P. 37(a)(5)(A) provides that, if a disclosure or requested discovery is provided *after a motion to compel is filed,* the court must, after giving an opportunity to be heard, require the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees, unless (1) the motion to compel was filed without first attempting in good faith to obtain the disclosure or discovery without court action; (2) the nondisclosure was substantially justified; or (3) other circumstances make an aware of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). Odom has not explained, in any way, why he was allegedly "unavailable" to meet with his prior counsel and to assist in preparing timely and accurate responses to Piazza's discovery requests. As a result, his failure to produce accurate responses until after the present motion was filed is not substantially justified. Moreover, Piazza allowed both Odom and the Department two (2) extensions of time within which to respond to the discovery requests/subpoena; yet, neither of them provided complete and

Case 3:07-cv-00413-BAJ -CN   Document 95   08/19/11   Page 19 of 21

accurate responses within the extensions granted. Finally, the Department has not responded to Piazza's present motion in any way and therefore has not opposed Piazza's request for attorney's fees and costs. Under the circumstances, an award of reasonable expenses and attorneys' fees to Piazza relating to this motion is not unjust.[15]

Accordingly;

**IT IS ORDERED** that the "Consolidated Motion to Compel Production of Documents from Defendant Bob Odom, Pursuant to Rules 34 and 37, and from the Louisiana Department of Agriculture and Forestry, Pursuant to Rules 37 and 45, with Request for Attorneys' Fees" (R. Doc. 72) filed by plaintiff, Piazza's Seafood World, LLC, is hereby **GRANTED IN PART** and **DENIED IN PART** as set forth in the above Ruling.

**IT IS FURTHER ORDERED** that, to the extent this Ruling directs the Louisiana Department of Agriculture and Forestry to provide supplemental responses to the subpoena *duces tecum* propounded upon it by the plaintiff, such supplemental responses shall be produced to the plaintiff within twenty (20) days of this Order.

**IT IS FURTHER ORDERED** that Piazza Seafood World, LLC is entitled to an award of the reasonable attorneys' fees and costs that it incurred in bringing this motion to compel; that respondents, Bob Odom and the Louisiana Department of Agriculture and Forestry, are each to pay one-half (½) of those fees and costs; and that, in connection with

---

[15] Since Odom's currently enrolled counsel only recently enrolled in this matter and, immediately upon doing so, met with Odom and filed supplemental responses and an opposition to the present motion, the undersigned finds that his present counsel shall not be responsible for paying any portion of the award of costs and fees. In the event Odom believes that this motion was necessitated by the conduct of any of his former counsel, he, of course, can seek recourse against them for the fees and costs that he must pay in accordance with this Order. Similarly, to the extent the Department finds that conduct of its counsel resulted in this motion, it also can seek reimbursement from counsel for the portion of fees and costs it pays in compliance with this Order.

Case 3:07-cv-00413-BAJ -CN   Document 95   08/19/11   Page 20 of 21

that award, the plaintiff and respondents are to do the following:

(1)     If the amount of attorneys' fees and costs owed is agreed upon by the plaintiff and the respondents, the respondents shall each pay one-half (½) that amount;

(2)     If the amount is not agreed upon by the plaintiff and the respondents, the plaintiff shall, within fifteen (15) days of the date this Order is signed, submit to the Court a report setting forth the amount of costs and attorneys' fees (including evidentiary support) incurred in obtaining this Order; and

(3)     The respondents shall have ten (10) days after the filing of plaintiff's report to file any oppositions.

Signed in chambers in Baton Rouge, Louisiana, August 18, 2011.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

Case 3:07-cv-00413-BAJ -CN   Document 95   08/19/11   Page 21 of 21