UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PIAZZA'S SEAFOOD WORLD, L.L.C. | CIVIL ACTION |
| VERSUS | |
| BOB ODOM, COMMISSIONER OF AGRICULTURE FOR THE STATE OF LOUISIANA, IN HIS OFFICIAL CAPACITY AND INDIVIDUAL CAPACITY | NO. 07-413-BAJ-CN |

**RULING & ORDER**

This matter is before the Court on the "Nonparty's Motion for Reconsideration by Magistrate Noland of Her Nondispositive Order of August 19, 2011"[1] (R. Doc. 98) filed by nonparty, Louisiana Department of Agriculture and Forestry ("the Department"). Plaintiff, Piazza's Seafood World, LLC ("Piazza"), has filed an opposition (R. Doc. 99) to the Department's motion.

The standard of review on a motion to reconsider a Magistrate Judge's ruling on a discovery matter (such as the "Consolidated Motion to Compel Production of Documents from Defendant Bob Odom, Pursuant to Rules 34 and 37, and from the Louisiana Department of Agriculture and Forestry, Pursuant to Rules 37 and 45, with Request for Attorneys' Fees" (R. Doc. 72) that was the subject of the undersigned's August 19, 2011 Ruling & Order) is whether that ruling was "clearly erroneous or contrary to law." Fed. R.

---

[1] The Ruling & Order sought to be reconsidered herein was actually signed by the undersigned on August 18, 2011 but was electronically docketed by the Clerk's Office on the following day. The Department referred to the date of the Ruling & Order as August 19, 2011 in its motion for reconsideration; the undersigned will also refer to the subject ruling by that date.

1

Civ. P. 72(a). There are two (2) aspects of the undersigned's August 19, 2011 Ruling & Order that the Department seeks to have reconsidered and reversed: (1) the award of attorney's fees and costs to Piazza; and (2) the finding that the documents sought in Subpoena Category No. 7, relating to the Eastern District litigation, are relevant to this litigation and required to be produced unless such documents are privileged, part of the public record, or were previously produced to Piazza in the context of the Eastern District litigation.

  The Department has not, however, offered plausible arguments indicating that either of the above two (2) decisions by the undersigned constitute clear error or are contrary to law. In arguing against the award of attorney's fees/costs, counsel for the Department (Karen Sher ("Sher") of the Litchfield firm) contends that the Department's failure to timely and fully respond to Piazza's subpoena and its complete failure to file any opposition to Piazza's motion to compel, despite the fact that such motion was pending in this Court for three (3) months, resulted from the fact that the Department's counsel was unaware that Odom's newly enrolled counsel was not representing the Department. Sher indicates that the Department's file regarding this case was transferred to Odom's newly enrolled counsel on or about May 31, 2011, and that Piazza's counsel was notified, on June 2, 2011, that the Department's counsel would be "watching from the sidelines." Sher contends that she did not find out, until the end of June 2011, that Odom's newly enrolled counsel would not be representing the Department in this matter and that it was not until July 25, 2011 that she received a package from Odom's newly enrolled counsel containing "the documents that the Department [ ] needs to produce in the above referenced litigation." *See*, Exhibit B to the Department's motion.

The record evidence in this matter, however, indicates that the Department's counsel never actually withdrew as counsel of record for the Department at any point and that the Department's counsel received full notice of the filing of Piazza's motion to compel on May 19, 2011. Specifically, four (4) attorneys with the Litchfield firm (Sher and three other attorneys, E. John Litchfield, Kathy Lee Torregano, and Carey Daste) received electronic notice of the filing of Piazza's motion to compel on the date it was filed, thereby triggering the 21-day period for filing an opposition thereto.[2] Additionally, although Sher sent a letter to Piazza's counsel on June 2, 2011, concerning withdrawal from representation, such letter only indicated that the Litchfield firm was withdrawing from representation of Bob Odom in his individual capacity; it made no mention of any withdrawal from representation of the Department. *See*, Exhibit A to the Department's motion. The motion to substitute counsel filed into the record by the Litchfield firm on June 6, 2011 (R. Doc. 73) was consistent with Sher's June 2, 2011 letter, stating that Edmund Wade Shows would be substituted "as attorney for Bob Odom in his individual capacity." Thus, there is absolutely nothing in writing suggesting that the Litchfield firm ever withdrew as counsel for the Department as it relates to this matter.

Furthermore, while it is true that, upon entry of R. Doc. 74 into the record,[3] attorneys Torregano and Sher ceased being copied on electronic filings in this matter for reasons unknown to the undersigned, the third attorney with the Litchfield firm representing the

---

[2] Counsel for Piazza also sent a copy of the motion to compel and exhibits to Torregano, Sher, and Tabitha Gray, the Department's general counsel, by email when it was filed, and Sher confirmed that such documents had already been sent to she and Torregano via e-service. *See*, Exhibits B and C to Piazza's opposition to motion for reconsideration, R. Doc. 99.

[3] R. Doc. 74 is the undersigned's order granting the motion to substitute Edmund Wade Shows as counsel for Bob Odom in his individual capacity.

Department, *i.e.*, E. John Litchfield, as well as another attorney with that firm, Carey Daste, nevertheless continued to receive all notices of electronic filing in this case up to the present date and could have informed attorneys Torregano and Sher regarding any filings made.[4] As such, there is no plausible excuse for the Litchfield firm's failure to respond to Piazza's motion to compel on behalf of the Department.[5] Considering that Sher admits she was informed that Odom's newly enrolled counsel would not be representing the Department in late June 2011[6] and the undersigned did not issue a ruling on Piazza's motion to compel until late August 2011, Sher still had two (2) months within which to review the status of the case and file some sort of response or request for extension of time relating to the motion to compel, yet, completely failed to do so.[7] In fact, she failed to

---

[4] Sher explains, in the motion for reconsideration, that Daste admitted she had ignored the e-notices she received, believing that the law firm was no longer involved in the case, and E. John Litchfield "did not realize that the e-files he was receiving from the court were not being sent to Kathy Torregano and [Sher]." While it is unfortunate that this failure to coordinate and communicate occurred among counsel at the Litchfield firm, such failure was in no way Piazza's fault and should not prejudice Piazza's ability to obtain timely and complete discovery in this matter.

[5] As Piazza's counsel points out, considering that two attorneys from the Litchfield firm (one of whom was the most superior attorney on the case) continued to receive electronic filings and that the firm had not formally notified anyone that it was no longer representing the Department, it was reasonable for Piazza's counsel to conclude that the Litchfield firm was still representing the Department and that Sher and Torregano simply were no longer working on the case since they were no longer receiving electronic notices. Regardless, since two attorneys from the Litchfield firm were receiving notices of filing throughout the period that the motion to compel was pending, the firm has no reasonable excuse for its failure to file some sort of response or extension request on behalf of the Department during the three (3) month period that the motion was pending.

[6] Odom's newly enrolled counsel also apparently informed the Department's general counsel, Tabitha Gray, around July 11, 2011 that he would not be filing an opposition to Piazza's motion to compel on behalf of the Department because he did not represent that entity.

[7] While Sher vaguely references a "unique situation" (*i.e.*, Odom's present condition of dementia) and her own personal issues (the fact that she only works part-time; that, during the time when discovery responses needed to be prepared, her father-in-law was hospitalized; that she took an 8-day long mission trip to Israel; and that she celebrated the Passover holiday) as reasons for the delay in responding to Piazza's subpoena, those reasons do not justify the failure to file any response to Piazza's motion or to, at the least, request an extension and notify the Court of the various issues cited in the motion for reconsideration. Furthermore, the undersigned is not exactly sure how Odom's dementia impedes the Department's ability, as an entity, to respond to the subpoena. It seems that Odom's dementia, if

4

inform the Court at any time, during that two (2) month period, of the purported confusion concerning the representation of the Department that resulted in delays in producing discovery and responding to Piazza's motion.[8]

While the Department's counsel apparently produced 263 Bates-labeled documents and two (2) privilege logs, each of which only identify a single document, to Piazza's counsel on August 4, 2011, the Department made no effort to notify the Court of such production and/or of any contention on the Department's part that such production satisfied its discovery obligations. The Department contends that Piazza's counsel had a responsibility to notify the Court of such supplemental production. However, the undersigned disagrees. Piazza had already filed a reply memorandum relating to its motion to compel several weeks before that supplemental production, and briefing related to Piazza's motion to compel was complete. If the Department contended that the August 5th supplemental production satisfied Piazza's motion to compel, it was the duty of the Department's counsel to notify the Court of such contention, not of Piazza's counsel, considering that such production came well after Piazza's motion to compel was filed in May 2011, and Piazza had already incurred significant fees and expenses on briefing

---

anything, would impact the ability of Odom's counsel to respond to discovery propounded to Odom in his individual capacity (which is likely the reason Piazza granted an extension of time for Odom to respond to requests for admissions and interrogatories during Rule 37 conferences in early May 2011). Since Odom is no longer the acting Commissioner for the Department, it seems unlikely that he would play an integral role in responding to a subpoena propounded to the Department.

[8] Sher admits, in the motion for reconsideration, that one of the reasons she did not file any response to the motion to compel was because she "mistakenly believed that Piazza's dispositive motion for summary judgment would be decided before the motion to compel" and that her "primary duty" was therefore "to produce as many documents as she could on the subpoena duces tecum before preparing an opposition to the motion to compel." *See*, R. Doc. 98-1, p. 5. If Sher indeed believed this, she should have filed a motion for extension of time to respond to the motion to compel with the Court, rather than completely neglecting the motion and failing to notify the Court of any of the issues raised in the motion for reconsideration.

related to the motion to compel brought about by the defendants' delays and failures. Furthermore, as Piazza now asserts, in its opposition to the Department's motion for reconsideration, the August 5th supplemental production does not appear to be a complete response to the subpoena directed to the Department and therefore would not have satisfied the motion to compel in any event. Thus, even if Piazza's counsel had informed the Court of the August 5th production by the Department, it likely would not have changed the outcome of the undersigned's August 19, 2011 Ruling & Order on Piazza's motion to compel.

In sum, the undersigned finds that the "confusion as to representation" argument asserted by the Department as grounds for overturning the attorney's fees award does not hold water. Considering that at least two (2) attorneys with the Litchfield firm were always receiving notices concerning the subject motion and that Sher had at least two (2) months to file a response on behalf of the Department after her alleged confusion was clarified, there is no excuse for the Department's complete failure to respond. As Piazza notes, "it is not Piazza's job to see to [the Department's] representation; rather, it is the [Department's] right and responsibility to see to its own defense." *See*, R. Doc. 99, p. 9. Piazza should not be prejudiced as a result of internal mis-communications and confusion on the part of the Department and its counsel as to its representation. Accordingly, the undersigned's award of attorney's fees and costs to Piazza relative to its motion to compel should be maintained. The undersigned agrees with Piazza that, if there was a communication breakdown concerning the Department's representation in connection with the subpoena and the related motion to compel, that is an issue for the Department and its legal counsel, rather than the Court, to resolve, through a possible apportionment of the

6

attorney's fees among the parties involved in the mis-communication.

Finally, in its argument that the portion of the August 19, 2011 Ruling & Order relating to Category No. 7 of the subpoena should be reversed, the Department contends that the Eastern District of Louisiana litigation is "irrelevant" to this matter since the Department's activities in monitoring seafood, both domestic and foreign, pre-dated the Eastern District litigation. That fact, however, does not render the Eastern District litigation irrelevant. As mentioned previously by this Court, the Eastern District litigation held that Odom's enforcement of a state statute that regulated the labeling of seafood violated the dormant Commerce Clause, where that statute treated domestic seafood differently than foreign seafood to the benefit of the former and the detriment of the latter. More generally, that litigation held that state regulations violate the dormant Commerce Clause by discriminating against or unduly burdening foreign or interstate commerce. *Piazza v. Odom,* 448 F.3d 744 (5th Cir. 2006). In the present suit, Piazza alleges that, in 2007, Odom promulgated, without any authorization from the Louisiana Legislature, certain Department regulations that facially discriminated against the very same foreign seafood that was at issue in the Eastern District litigation; that he interpreted those regulations to directly regulate not only the foreign seafood sold within Louisiana but seafood sold in other states as well; and exercised discretion to seize and search Piazza's property without a warrant, a hearing, or reasonable cause in enforcing those regulations. Piazza specifically alleges that Odom took those actions with knowledge that they were unconstitutional because he had knowledge of the Fifth Circuit's determination in the Eastern District litigation.

The scope of discovery is broad and permits discovery of "any nonprivileged matter

that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Considering that Piazza specifically alleges the relevance of the Eastern District litigation to his claims in this suit and the fact that such litigation involved similar parties and allegedly similar unconstitutional conduct, documents concerning such litigation certainly meet the broad standard of being "relevant to [Piazza's] claims." Furthermore, while the Department may have regulated foreign seafood prior to the Eastern District litigation, without any complaints by Piazza, it is the outcome of the Eastern District litigation (*i.e.*, the declared unconstitutionality of Odom's conduct) that Piazza alleges as the basis for wrongdoing and retaliation on Odom's part in this case.[9] Put another way, even if the underlying conduct by Odom in the Eastern District litigation and this case is not identical (*i.e.*, regulation of the labeling of foreign seafood (Eastern District litigation) versus monitoring of seafood for the presence of harmful antibiotics (present case)), the issue of discrimination against (and undue burden relating to) foreign commerce in violation of the dormant Commerce Clause is the common thread that renders the Eastern District litigation relevant to this matter. In short, since it is alleged that the Eastern District litigation put Odom on notice that his conduct in this case was unconstitutional, Piazza is entitled to discover information relating to that case which could substantiate that allegation. The Department's discussion, in its motion for reconsideration, of the doctrine of qualified immunity and how it should allegedly

---

[9] The Department posits the following question, in its motion for reconsideration: "Since Piazza never complained about *prior* sets of similarly worded emergency regulations that were enacted and enforced prior to the Eastern District/Fifth Circuit litigation, how was either Bob Odom or the Department, or the Department's legal counsel, J. Marvin Montgomery, to know that Piazza considered its actions and enactments to be in violation of Piazza's constitutional rights?" *See*, R. Doc. 98-1, p. 15. However, the issue in this case is not whether Odom or the Department knew that *Piazza* considered their actions to be illegal; the issue is whether Odom, acting on behalf of the Department, enacted the regulations with knowledge that they violated the Commerce Clause by burdening or discriminating against foreign and interstate commerce?

8

limit discovery with respect to the Eastern District litigation is misplaced.[10][11]  Since the Department has not offered any basis for finding that the undersigned's decision relating to the Eastern District litigation documents was clearly erroneous or contrary to law, such decision should likewise be maintained.  Finally, Piazza is also entitled to and will be

---

[10] In the argument relating to qualified immunity, the Department contends that, at the time the regulations in question were enacted, there was no jurisprudence in Louisiana holding that the Department lacked the authority to stop and test imported fish for the presence of antibiotics.  The Department therefore asserts that Odom could not have known that the regulations he enacted (and the actions that the Department took pursuant thereto) were illegal, and thus, he is entitled to qualified immunity.  The problem with the Department's argument is that it is too limited in its perspective relative to the scope of qualified immunity.  An official is not automatically entitled to qualified immunity if there is not a case on point declaring that his/her conduct is unconstitutional.  Instead, the issue is whether the Fifth Circuit or the Supreme Court has either addressed the precise issue in the case or an issue "sufficiently analogous that a reasonable official would understand from its resolution" that it is illegal or unconstitutional to take an action.  *Gunaca v. State of Tex.*, 65 F.3d 467 (5th Cir. 1995); *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034 (1987)("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent"); *Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010)(To be "clearly established" for qualified immunity purposes, unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal).

The district judge assigned to this matter denied a motion for summary judgment filed by Odom on the basis of qualified immunity on October 20, 2010, on the basis that such motion was premature since Piazza had sufficiently stated a claim that Odom had notice that his conduct was illegal, precluding qualified immunity, based upon his notice of the Eastern District litigation and since no "significant discovery" had yet occurred concerning that issue.  *See*, R. Doc. 65, p. 4-5.  Piazza is simply attempting to conduct the discovery necessary to fully evaluate that qualified immunity issue- *i.e.*, whether the Eastern District litigation was "sufficiently analogous" to the conduct in the present suit that it would indeed put a reasonable official on notice that the conduct at issue in this suit was illegal/unconstitutional.  Thus, production of documents related to the Eastern District litigation is relevant to the qualified immunity issue.  Even though counsel for the Department "implores" the Court not to require such discovery on the basis that it "will take hours of attorney time, and the Department, and ultimately, the State taxpayer will have to pay those costs," the undersigned has attempted to tailor the required production as much as possible by restricting the production to those documents that have not been previously produced to Piazza and are not part of the public record.  The undersigned further notes that expense to the Department (and ultimately the taxpayer) would have been far less had discovery issues in this matter been timely resolved without the necessity of the various motions that have been filed, which were brought about by the delays and failures of the Department and/or its counsel.

[11] Additionally, the Department's argument concerning an alleged conflict of interest on the part of Piazza's attorneys (on the basis that an attorney with Piazza's current law firm worked in the past with someone who represented Odom in the Eastern District litigation) is irrelevant to this motion.  The undersigned agrees with Piazza that, if counsel for Odom or the Department want to file a motion to disqualify Piazza's counsel on the basis of that alleged conflict of interest, they are free to do so; however, such conflict of interest issue has no bearing upon the issues presented by Piazza's motion to compel.

awarded a reasonable amount of attorney's fees and costs associated with defending against this motion for reconsideration, which amount will be included within the award of fees/costs associated with its motion to compel that the Department and its present counsel are required to pay. Since Odom, in his individual capacity, did not join in the present motion for reconsideration or file one on his own behalf, neither he nor his present counsel shall be required to pay any attorney's fees and costs associated with the present motion.

Accordingly;

**IT IS ORDERED** that the "Nonparty's Motion for Reconsideration by Magistrate Noland of Her Nondispositive Order of August 19, 2011" (R. Doc. 98) filed by nonparty, Louisiana Department of Agriculture and Forestry, is hereby **GRANTED**, but that, after reconsideration, the undersigned's August 19, 2011 Ruling & Order (R. Doc. 95) is nevertheless **MAINTAINED** as issued.

**IT IS FURTHER ORDERED** that the request of plaintiff, Piazza's Seafood World, L.L.C., for an award of the attorney's fees and costs that it incurred in connection with this motion for reconsideration is hereby **GRANTED**, and such amount is to be included in the general award of fees/costs associated with Piazza's motion to compel to be paid solely by the Department and/or its counsel.

Signed in chambers in Baton Rouge, Louisiana, September 29, 2011.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**