UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PIAZZA'S SEAFOOD WORLD, LLC

VERSUS

BOB ODOM, COMMISSIONER OF
AGRICULTURE FOR THE STATE
OF LOUISIANA

CIVIL ACTION

NO. 07-413-JJB

**RULING ON MOTION**

This matter is before the court on a motion (doc. 71) by plaintiff, Piazza Seafood World, LLC, for partial summary judgment dismissing defendant Bob Odom's affirmative defense of qualified immunity. The motion is opposed; numerous briefs have been filed. There is no need for oral argument.

*Background*

Plaintiff Piazza Seafood is a company that imports seafood from China and Vietnam and distributes its products in Louisiana. Defendant Bob Odom, acting as Commissioner of Agriculture and Forestry for the State of Louisiana,[1] seized large quantities of seafood from Piazza Seafood pursuant to a regulation promulgated and enforced by his department. The regulation at issue is La. Admin. Code 7:XXXV.511 ("the Regulation"), which gave the Department authority to seize and inspect fish imported from Vietnam and China for the presence of fluoroquinolones.

Piazza Seafood filed this action challenging the regulation on the basis that

---

[1] The current Commissioner is Dr. Mike Strain.

1

it facially discriminates against foreign commere and violates the Commerce Clause.  Plaintiff additionally claimed that Odom acted outside the scope of his authority under state law in promulgating the regulation.  In June of 2007, this court certified the state law issue to the Louisiana courts under the Pullman doctrine.[2]  The state district court then heard the matter and ruled that Odom had no authority under the Louisiana Constitution or statutes to promulgate the Regulation.  On appeal, the state appellate court affirmed and the decision is now final.[3]

Thereafter, the case was reopened in this court; discovery was conducted; and the instant motion for partial summary judgment was submitted on briefs.

*Defense of Qualified Immunity– Generally*

Under Fifth Circuit jurisprudence, qualified immunity is "a shield from civil liability for 'all but the plainly incompetent or those who knowingly violate the law.'" *Beltran v. City of El Paso*, 367 F.3d 299, 308 (5th Cir. 2004).[4]  The Supreme Court has established a two-prong test to ascertain the viability of a government official's assertion of qualified immunity.  *Goodson v. City of Corpus Christi*, 202 F.3d 730,

---

[2]  *Railroad Commission v. Pullman Co.,* 312 U.S. 496 (1941).

[3]The state appellate court affirmed the trial court's preliminary injunction ruling, finding that defendant did not have the authority to regulate the content of imported seafood under Louisiana law.  *Piazza's Seafood World, LLC, v. Odom*, 6 So.3d 820 (La. App.  1 Cir. 2008).  Thereafter, on a motion for permanent declaratory and injunctive relief, the district judge re-affirmed his findings.  No appeal has been taken from that judgment.

[4]  Citing *Jones v. City of Jackson*, 203 F.3d 875, 883 (5th Cir.2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341).

736 (5th Cir. 2000); *Siegert v. Gilley*, 500 U.S. 226 (1991). First, the court must examine whether the "plaintiff has alleged a violation of a clearly established right." *Goodson*, at 736. Second, the court must examine whether the defendant's conduct was objectively reasonable in light of "clearly established" law at the time of the alleged violation. Id. The question of objective reasonableness may be resolved on summary judgment, "[o]bjective reasonableness is a matter of law for the courts to decide." Id.[5]

*Qualified Immunity– Scope of Discretionary Authority*

More specifically, as it relates to the motion at hand, the question is whether Odom, in issuing and enforcing the Regulation, was acting within the scope of his "discretionary authority." An official claiming qualified immunity must show that "the conduct in question occurred while he was acting 'in his official capacity and within the scope of his discretionary authority.'" *Cronen v. Texas Dept. of Human Services*, 977 F.2d 934, 939 (5th Cir. 1992).[6]

*Arguments of the Parties*

Plaintiff contends that the state court's finding that Odom acted ultra vires is the equivalent of finding that he was not acting within his discretionary authority for purposes of qualified immunity. Additionally, plaintiff contends that the state court's

---

[5] Quoting *Williams v. Bramer*, 180 F.3d 699, 702 (5th Cir.1999).

[6] Quoting *Garris v. Rowland*, 678 F.2d 1264, 1271 (5th Cir. 1982).

3

finding is not subject to reconsideration under basic principles of full faith and credit, citing *San Remo Hotel, L.P. v. City and County of San Francisco, California,* 545 US 323 (2005). In response, defendant argues that he acted in good faith as he believed that he had the authority to pass the emergency regulations to protect the public. Odom further argues that a reasonable official would not have known that he was acting beyond the scope of his authority.

*Discussion*

The court agrees with plaintiff that the state court's holding that Odom acted beyond his authority in promulgating and enforcing the regulation is determinative of issue that Odom exceeded his authority under state law. The court further agrees with plaintiff that Odom's subjective beliefs are not at issue here. See *Thompson v. Upshur County, Texas*, 245 F.3d 447 (5th Cir. 2001).

What is at issue, and what plaintiff fails to squarely recognize, is that Odom additionally argues that a reasonable official in his position would not have known that he was acting beyond the scope of his authority. The full faith and credit clause is not implicated because this is a different issue from what was presented and decided in state court.

The Fourth Circuit[7] examined this particular aspect of qualified immunity in depth in its decision in *In re Allen*, 106 F.3d 582 (4th Cir. 1997). In that case, the

---

[7] While the Fifth Circuit cases cited by the parties do not go into as much depth, they appear to be consistent with the Fourth Circuit's decision.

4

Fourth Circuit held that a public official may claim qualified immunity "as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority." Id. at 593. "This test is objective, and examines what a reasonable official in the defendant's position would have understood the limits of his statutory authority to be." Id. This test is more than just whether the official acted unlawfully– if that were the relevant inquiry "any illegal action would, by definition, fall outside the scope of an official's authority." Id. at 594. The salient issue is not whether Odom exceeded his authority (as found by the state court); but whether Odom's actions in promulgating and enforcing the regulation were clearly established to be beyond the scope of his authority.[8]

*Were Odom's Actions Clearly Beyond the Scope of his Authority?*

Defendant makes the following arguments (which the court summarizes) in support of his argument that a reasonable official would have believed that he was acting within the scope of his discretionary authority:

- At all relevant times, general constitutional and statutory provided the Commissioner the authority to "exercise all functions of the state relating to the promotion, protection, and

---

[8] The Fifth Circuit employed this same reasoning in *Cronen* at 939. Otherwise, "[t]he 'good faith' prong would disappear from the analysis, and an official who acted wrongly would rarely be entitled to immunity." Id. The court further stated, "That result would conflict with the purpose of qualified immunity—allowing officials to exercise discretion without fear of liability when they make mistakes." Id.

- advancement of agriculture . . ."[9] and "direct the department, and except as otherwise provided by law... adopt all necessary rules and regulations for the purpose of implementing the laws relating to agriculture."[10]
- In 2002, the Louisiana Senate passed Concurrent Resolution No. 13 directing the Commissioner of Agriculture to promulgate rules and regulations necessary to ensure that all *shrimp and crawfish* meet U.S. Food and Drug Administration (FDA) standards regarding *chloramephenicol* prior to sale in Louisiana. SCR No. 13, Reg. Sess. 2002. The resolution encouraged intergovernmental endeavors by the Commissioner, the LDAF and the Louisiana Department of Health and Hospitals (DHH) to carry out the purpose of the resolution.[11]
- Beginning in 2002, the LDAF enacted emergency rules and began inspecting **shrimp, crawfish and crabmeat** to ensure it was free of **chloramphenicol**. (Doc. 79-2, Afft. Marvin Montgomery).
- Beginning in 2005, the LDAF started promulgating emergency rules regarding **fluoroquinolones** in **seafood**, with the final amendment being promulgated in November of 2007. Id.
- All of these rules were promulgated by the Commissioner upon the advice of LDAF's legal counsel. Id.
- On May 4, 2007, Odom issued stop orders seizing catfish that plaintiff had imported from China; 25,000 pounds tested positive for fluoroquinolones.
- On May 23, 2007, the DHH and the LDAF entered into a Cooperative Endeavor Agreement to work together in combating the risk to the public of seafood adulterated with fluoroquinolones. Id. at 5. **The Agreement "merely confirmed the reality of . . . what the two agencies believed and had a history and custom of doing to protect the public."** Doc.

---

[9] La. Const. art. III § 10.

[10] La. R.S. 3:3.

[11] Defendant argues that the Louisiana Legislature appropriated money to the LDAF for the express purposes of funding the "inspection of . . . fish and fish products." See 2006 La. Acts 17; 2007 La. Acts 18. Plaintiff argues the appropriated monies are for a federally funded seafood inspection program unconnected with the instant regulations. The court fails to find that this adds much to the equation in any event.

- 79–2 (Afft. Glenn Cambre).
- On June 12, 2007, plaintiff filed this lawsuit– the first suit to challenge LDAF regulations regarding testing for antibiotics.[12]
- In 2007, the House passed Concurrent Resolution No. 197, urging the Commissioner to ensure that all food, including aquatic products, sold in Louisiana meet FDA standards on chloramphenicol and fluoroquinolone. The resolution notes, with apparent approval, that the Commissioner had already implemented regulations governing the testing of aquatic products for the presence of chloramphenicol and fluoroquinolone. It also states that "the exercise of this police power in regard to adulterated food and other products ingested by the people of this state has been vested in the Department of Agriculture and Forestry and the Department of Health and Hospitals." HCR No. 197, Reg. Sess. 2007.[13]

In opposition, plaintiff makes several points worthy of note. First, there is no constitutional or statutory authority specifically authorizing the Commissioner to promulgate regulations concerning the content of seafood for purposes of protecting public health and safety. Second, under the Louisiana Revised Statutes, the state

---

[12] Plaintiff additionally relies on the decision in *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 747 (5th Cir. 2006) as establishing that the Commissioner cannot seize seafood in manner discriminatory to foreign commerce. That case clearly established that regulations on seafood that discriminate against foreign commerce are subject to strict scrutiny. However, when this court invoked the Pullman doctrine, it did so precisely to "avoid" determination of the commerce clause argument raised by plaintiff. Odom's liability stems from his exceeding his authority under state law. In short, the question is not whether a reasonable official would have known he was violating the Commerce Clause, but rather whether a reasonable official would have known that he was exceeding the scope of his discretionary authority under state law in promulgating regulations regarding testing of seafood for antibiotics. Consequently, the fact that this lawsuit was the first to challenge the actions at issue is clearly a point in favor of finding qualified immunity.

[13] Odom additionally points to the fact that, in July of 2004, the legislature specifically extended the Commissioner's powers of regulation to "aquaculture"– the raising and marketing of aquatic livestock in private ponds. La. R.S. 3:559.2(A).

7

health officer and the LDHH are given "exclusive jurisdiction" over the sanitary inspection of meat, milk, and other food products "which may affect public health and safety." La. R.S. 40:5 (15). Third, while governmental entities may enter into cooperative endeavors in some instances, the agreement was signed after defendant acted in this case. Fourth, resolutions are not acts of the legislature.

Having carefully considered the arguments of the parties and the supporting evidence,[14] the court concludes that the historic facts underlying the determination of the reasonableness issue are not in dispute; and, the question of objective reasonableness is consequently a matter for the court. *Bramer* at 703.

Furthermore, the court finds that, while there was no specific legislative authority authorizing the Regulation, Odom's actions were objectively reasonable under the clearly established law at that time. The state statutes vested the authority to inspect food products and to regulate the content of food for health purposes with the LDHH. Historically, however, there had been a practice of the LDHH partnering with the LDAF to test and monitor products for the presence of chloramphenicol. See, SCR No. 13, Reg. Sess. 2002; Afft. of Glenn Cambre; Afft. Marvin Montgomery. An official in Odom's position would have reasonably believed that he could regulate the content of seafood for public health purposes as part of a cooperative endeavor with the LDHH. Id. Members of the legislature and LDAF's legal counsel all apparently thought that Odom was empowered to act in this area,

---

[14] It is well established that the court has no duty to search the record.

as well.

Accordingly, the motion for partial summary judgment (doc. 71) by plaintiff is hereby DENIED as the court rules that Odom is entitled to qualifies immunity as provided herein.

Baton Rouge, Louisiana, November 30, 2011.

_____
JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA